Filed 10/24/25 Golden Global Enterprises v. Onderko CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GOLDEN GLOBAL ENTERPRISES, INC., et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> TIM ONDERKO, <br><br>     Defendant and Respondent. | A170621 <br><br> (San Mateo County <br> Super. Ct. No. 22-CIV-02099) |
| TIM ONDERKO, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DONALD A. WILSON, <br><br>     Defendant and Appellant. | A170716 <br><br> (San Mateo County <br> Super. Ct. No. 22-CIV-02332) |

Golden Global Enterprises, Inc. (GGE), Global Investment Trust–2017 (GIT), and Donald A. Wilson (collectively, appellants) appeal from the trial court's judgment confirming an arbitration award in favor of Tim Onderko. We affirm the judgment insofar as it finds vacatur of the award is not warranted, but remand for the trial court to determine if correction of the award is warranted.

1

Wilson, an attorney, is GGE's chief executive officer, and, at least at its founding, also its secretary, chief financial officer, director, and agent. Wilson is also the trustee of GIT, a revocable trust that owns 100 percent of GGE's stock. No other individual appears to have any position or interest in GGE.

This case stems from a business relationship between Wilson and Onderko related to a property in Sacramento (the property). The property is owned by GGE and GIT, which are in turn controlled by Wilson. 8880 Elder Creek Holdings LLC (ECH) holds the master lease on the property with the option to buy it.

In 2019, pursuant to an agreement of memorandum and understanding (MOU) drafted by Wilson, GGE and GIT—by and through Wilson as trustee—acquired a 51 percent interest in ECH. Onderko retained the remaining 49 percent ownership interest in ECH. It was the intent of ECH's members to sell the property, and if they could not agree on a sale, the MOU sets forth a buy-sell provision to allow one member to force a sale while providing the other member the option to buy out the interest of the member who wishes to sell. After Onderko sought to invoke the buy-sell provision, the parties engaged in the litigation and arbitration proceedings underlying this case.

*The MOU*

Under the terms of the MOU, Wilson became the managing member of ECH and Onderko was responsible for its day-to-day management.

The first paragraph of the MOU specifies that the agreement is between the corporate entities described above and, critically for purposes of this appeal, also includes Wilson. It states the MOU is "by and between

2

[GGE], . . . Donald A. Wilson, trustee of [GIT] ('Buyer'), and [ECH], . . . ('Seller'). It also includes Donald A. Wilson ('Don'), the beneficial owner of Buyer and Tim Onderko ('Tim') and Tom Sheridan ('Tom')[1] the beneficial owners of Seller, all of which are hereinafter referred to as the parties."

According to the MOU, the "plan is to sell the property by summer of 2021, or such sooner or later date" agreed upon by Wilson and Onderko, with the goal of "mutually maximiz[ing] total return while preserving the right of each member to make an individual decision to 'sell' if mutual agreement cannot be reached." To that end, the MOU sets forth the buy-sell provision underlying these proceedings, which provides:

"[T]he member wanting to sell shall deliver a written notice to the other member indicating the price and terms on which they are willing to sell their interest and the other member shall have 10 days after receipt to respond whether they will buy or sell that interest on those terms, conditions and price (adjusted for each member – ie. the net proceeds based on a stated sales price each respective member would receive in accordance with this agreement) and if they do not respond within the 10 days, they will be deemed to have agreed to sell. The parties understand that this may, but is not required, to be effected through a sale to a third party. Any such sale must close in not more than 60 days after the buy or sell decision is made."

Also relevant here, the MOU provides that "[t]he parties shall enter into good faith mediation to resolve any dispute arising out of this agreement" and, if mediation is unsuccessful, "the dispute shall be resolved by binding arbitration . . . ."

---

[1] Under the MOU, Sheridan sold his interest in ECH; thereafter, he was no longer involved in ECH or the proceedings below. Thus, we do not refer to him in this opinion other than to note he was a listed party to the MOU.

3

The MOU was signed by Onderko and Wilson above their printed individual names; Wilson also signed on behalf of GGE and GIT.

*Onderko Triggered the Buy-sell Provision*

In March 2022, Onderko received an offer from a third party to buy the property for a total value of $8.6 million. He then triggered the procedure in the buy-sell provision, sending written notice to Wilson indicating that Onderko wished to sell the property based on the offer's valuation and providing Wilson an opportunity to purchase Onderko's interest in ECH. Onderko subsequently sent a notice to Wilson calculating that, with the $8.6 million offer as the starting point for valuing the property and accounting for various obligations (such as loan payoffs, fees, and costs), Onderko's 49 percent interest was valued at roughly $1.67 million.

Wilson responded that he accepted the offer to buy Onderko's interest in ECH, but disputed the value of that interest.

The parties did not close the sale pursuant to Onderko's offer. A May 2022 mediation took place but did not result in a settlement.

*The Lawsuits*

In May 2022, GGE and GIT—by and through Wilson as trustee—filed a complaint for declaratory relief against Onderko in case No. 22-CIV-02099 (the declaratory relief case), seeking a judgment that Onderko's offer did not comport with the buy-sell provision in the MOU and that Wilson did not accept the offer. That complaint stated that Wilson was the "controlling owner of GGE and GIT."

In June 2022, Onderko sued Wilson for breach of fiduciary duty in case No. 22-CIV-02332 (the fiduciary duty case) on the basis that, among other claims, Wilson, as the majority member and managing member of ECH, refused to exercise the purchase option on behalf of ECH.

4

In October 2022, the trial court issued an order deeming the declaratory relief and fiduciary duty cases "related" and found "all of the parties in [the fiduciary duty case] are also parties in [the declaratory relief case]" and the cases were based on the same or similar claims regarding the same property and business transactions.

*Arbitration Proceedings*

Around the same time as the filing of the lawsuits in 2022, Onderko filed a demand for arbitration before the American Arbitration Association (AAA). In the demand, Onderko asserted in paragraph 4 that "Tim [Onderko] and Don [Wilson] are parties to that certain Agreement and Memorandum of Understanding (the 'MOU')," which subjected to arbitration any disputes among its parties (i.e., Onderko and Wilson) related to the MOU. Onderko asserted the May 2022 unsuccessful mediation satisfied the prerequisite for arbitration. He alleged causes of action for breach of contract and breach of covenant of good faith and fair dealing by Wilson.

In Wilson's answer to the arbitration demand, he admitted he was a party to the MOU, stating: "In response to the allegations of Paragraph 4, Respondent admits that Respondent [i.e., Wilson] and Claimant [i.e., Onderko] are parties to that certain Agreement and Memorandum of Understanding (the 'MOU')." He further admitted that, "through ownership of . . . [GGE] and [GIT]," Wilson owned 51 percent of ECH. However, he did not agree the May 2022 mediation satisfied the requirement for good faith mediation prior to arbitration. Wilson also wrote to AAA to object to the arbitration demand on that same ground, as well as based on his general objection to the authority and jurisdiction of AAA to administer the arbitration. Critically, though, Wilson did *not* object in either the answer or his correspondence to AAA on the ground that the arbitrator lacked

jurisdiction over him in his individual capacity on the basis that GGE and GIT, rather than Wilson personally, were the necessary parties to any arbitration.

In May 2023, after the parties had another unsuccessful mediation earlier that year, Onderko petitioned the court to compel arbitration in the declaratory relief case. In August 2023, the trial court granted that petition based on the arbitration clause in the MOU, finding the parties had met the prerequisite mediation condition for arbitration.

The arbitration hearing took place in August 2023.

In October 2023, the arbitrator issued its final award finding in favor of Onderko. The arbitrator found Onderko made a valid offer to Wilson under the terms of the buy-sell provision, Wilson accepted that offer, and Wilson breached the MOU and the implied covenant of good faith and fair dealing by failing to pay Onderko after accepting. The arbitrator found Wilson had to pay damages for Onderko's 49 percent interest in ECH, which was by then valued at around $2 million (because more debt had been paid down by that time), plus interest. The final award stated that, after payment, "Respondent [i.e., Wilson] will own 100% of the membership interest in ECH."

The final arbitration award addressed various arguments raised by Wilson; however, Wilson did not raise any jurisdictional objections to the arbitration.

*Petitions To Confirm Arbitration Award*

In November 2023, Onderko filed a petition to confirm the arbitration award in the declaratory relief action.

In a December 2023 "Special Appearance to Object to Jurisdiction," Wilson, "as an individual," opposed Onderko's motion by arguing—for the first time—that the "arbitrator made a major jurisdictional error by making a

6

finding against Wilson as an individual even though the MOU provision that was the basis of the Onderko claim in the arbitration . . . was between the Members of ECH, and that Wilson, as an individual clearly is not a Member." Wilson asserted he was not a party to the declaratory relief case in his individual capacity and Onderko's petition to compel arbitration in that case only extended to members of ECH; specifically, GGE, GIT, and Onderko. Wilson noted Onderko, individually, had previously filed a "long pending arbitration" against Wilson, individually, that took place after the court granted the petition to compel arbitration, but he contended the final award resulting from that arbitration was jurisdictionally deficient as it was against a "non-party." As a result, Wilson asserted, the trial court lacked jurisdiction to enter judgment against him and the arbitration award should be vacated.

The trial court issued a tentative ruling and held a hearing on Onderko's first petition to confirm the arbitration award. At that hearing, the parties agreed Onderko would refile the petition in the fiduciary duty case based on Wilson's objection, and the court continued the hearing.

In January 2024, Onderko refiled his petition to confirm the arbitration award, this time in the fiduciary duty case. Wilson restated his objection to the petition on the same grounds raised in his prior "Special Appearance to Object to Jurisdiction" and sought to vacate the arbitration award.

The trial court issued a tentative ruling confirming the arbitration award. The court found the MOU expressly applies not only to GGE, GIT, and ECH, but also to Wilson as an individual; references him personally (as " 'Don' ") throughout the document; and was signed by Wilson three times, including once on behalf of himself. The court also found Wilson actively participated in the arbitration—which demonstrated an implied agreement to arbitrate through conduct—and failed to submit any evidence that he

7

objected to the arbitrator's issuance of an award against him in his individual capacity. The court therefore disagreed with Wilson's contention that the arbitrator lacked jurisdiction over him personally because Wilson, in an individual capacity, never agreed to submit to arbitration. Finally, even if the arbitrator wrongly found Wilson was a party to the MOU in his individual capacity (which Wilson did not substantiate) or otherwise wrongly decided the arbitration, Wilson had not offered any evidence or legal authority that would support disturbing the finality of the arbitrator's decision under the limited statutory authority in which a court may do so.

After a March 6, 2024 hearing on the matter, the trial court adopted the tentative ruling as the ruling of the court and confirmed the arbitration award. The court entered judgment in favor of Onderko in both cases on April 1, 2024; the court entered an amended judgment on April 15, 2024, correcting a computational error and awarding Onderko $2,004,979.96 (the amount the arbitration award found he was due), plus prejudgment interest, administrative fees, and expenses, totaling $2,402,643.01. Appellants appealed.

## DISCUSSION

Appellants assert multiple arguments claiming the trial court's judgment confirming the arbitration award is void and the award should be vacated. None of them are persuasive.

"Under California law, the scope of judicial review of arbitration awards is very narrow. [Citations.] Consistent with this limited role, a court may vacate an arbitral award only on certain statutorily enumerated grounds. [Citation.] These are laid out in the Code of Civil Procedure,[2] and reflect not error in the merits of the decision, but ' "circumstances involving

---

² All further statutory references are to the Code of Civil Procedure.

serious problems with the award itself, or with the fairness of the arbitration process." ' " (*VVA-TWO LLC v. Impact Development Group, LLC* (2020) 48 Cal.App.5th 985, 998.)

Section 1286.2, subdivision (a) sets forth the limited grounds for vacating an arbitration award, two of which are relied upon by appellants. Specifically, the trial court must vacate the award if it determines the rights of a party were substantially prejudiced by the misconduct of a neutral arbitrator (§ 1286.2, subd. (a)(3)), or if the court determines the arbitrator exceeded its powers and the award cannot be corrected without affecting the merits of the decision (*id.*, subd. (a)(4)).[3]

We review an order confirming an arbitration award de novo. (*VVA-TWO LLC v. Impact Development Group, LLC*, *supra*, 48 Cal.App.5th at p. 998.)

## I. The Trial Court's Judgment Is Not Void and Vacatur of the Arbitration Award Is Not Warranted

Appellants aver the trial court's judgment confirming the arbitration award is void and that the award should have instead been vacated. Appellants' primary assertion in support of this argument is that the arbitrator exceeded its powers by issuing an award against Wilson in his individual capacity. Appellants claim the arbitrator lacked jurisdiction over Wilson individually (i.e., personal jurisdiction) because he was not a party to the MOU's arbitration clause and therefore never agreed to arbitrate. They

---

[3] Appellants cite to section 1286.2, subdivision (a)(2) throughout their opening brief, purportedly to reference both the substantial-prejudice-to-rights ground and the excess-of-powers ground. That subdivision concerns corruption in the arbitrator, which is not at issue in this appeal, and we therefore do not address it.

9

further contend Wilson never waived any jurisdictional objection.  We are not convinced.

"[A] party who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid" is properly deemed to have forfeited that challenge to the arbitration process.  (*Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 329 (*Cummings*).)  As explained in *Cummings*, the forfeiture rule in arbitration proceedings "exists to avoid the waste of scarce dispute resolution resources, and to thwart game-playing litigants who would conceal an ace up their sleeves for use in the event of an adverse outcome.  The proper criterion for dividing the sheep from the goats [citation] is a litigant's *knowledge* of a defense to the jurisdiction of the arbitrator.  Those who are aware of a basis for finding the arbitration process invalid must raise it at the outset or as soon as they learn of it so that prompt judicial resolution may take place before wasting the time of the adjudicator(s) and the parties."  (*Id.* at pp. 328–329, fns. omitted.)

Unlike subject matter jurisdiction, an objection to personal jurisdiction may be waived.  (See *Marlow v. Campbell* (1992) 7 Cal.App.4th 921, 928.)

Here, appellants' personal jurisdictional challenge is unavailing because Wilson forfeited any potential jurisdictional defense to the arbitration process by knowingly participating in the arbitration without disclosing this ground for allegedly finding it invalid.  (See *Cummings*, *supra*, 128 Cal.App.4th at p. 329.)  Appellants do not contend that they did not know of this defense at the outset of the arbitration proceedings.  (See *ibid.* [litigant's knowledge of defense to the jurisdiction of the arbitrator is critical distinction].)  Instead, appellants seek to argue that Wilson *did* object to the arbitrator's jurisdiction prior to the arbitration.

However, the record citations in appellants' brief in support of that assertion merely show that Wilson's pre-arbitration objections (in his answer to Onderko's demand for arbitration and in correspondence with AAA) were based on whether the mediation prerequisite in the MOU was satisfied and whether AAA had the authority to administer arbitration. Nowhere in those objections did Wilson raise an argument that the arbitrator lacked personal jurisdiction over him in his individual capacity. Instead, the record reflects that the first time Wilson raised that jurisdictional objection was in his December 2023 "Special Appearance to Object to Jurisdiction"—*after* the arbitrator returned an adverse ruling. At that point, it was too late to do so. (See *Cummings, supra,* 128 Cal.App.4th at p. 328 [litigants may not "conceal an ace up their sleeves for use in the event of an adverse outcome"].)

Appellants' reliance on *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718 for the proposition that jurisdiction may not be waived or conferred by conduct is misplaced. That case merely held that "*[s]ubject matter jurisdiction . . .* cannot be conferred by consent, waiver, or estoppel." (*Id.* at pp. 1723–1724, italics added.) But, as appellants acknowledge, their claim that the arbitrator lacked authority over Wilson concerns *personal* jurisdiction, which, unlike subject matter jurisdiction, may be waived. (See *Marlow v. Campbell, supra,* 7 Cal.App.4th at p. 928.)

Additionally, we are not persuaded by appellants' claim that the arbitrator violated the due process rights of GGE and GIT on the basis that it "adjudicated [their] property rights in their absence." Appellants attempt to raise various arguments as to why GGE and GIT, who together owned 51 percent of ECH, never consented to arbitration, thereby depriving the arbitrator of subject matter jurisdiction over the buy-sell-provision dispute underlying arbitration.

11

We recognize that, according to the MOU, GGE and GIT were the owners of the 51 percent interest in ECH.  However, appellants' attempt to argue that Wilson "never owned GGE and GIT's 51% interest" is belied by his answer to Onderko's arbitration demand, in which he admitted that, "through ownership of . . . [GGE] and [GIT]," *Wilson* owned 51 percent of ECH.  This was not the first nor the only time the ownership distinction was blurred by Wilson.  For example, in a pre-arbitration e-mail from Wilson to Onderko, Wilson stated: "When [ECH] needed additional funds we negotiated my further investment through which I acquired 51% for $100,000." Additionally, Wilson is the trustee of GIT (which in turn is the sole shareholder of GGE) as well as the chief executive officer (and, apparently, every other officer) of GGE.  This is further supported by his arbitration testimony that he "controlled" both GGE and GIT.

Thus, it is apparent from the record that all parties, including Wilson, understood that he was acting on behalf of GGE and GIT when discussing the buy-sell provision at the center of the dispute during the arbitration proceeding.  In one of many examples, Wilson testified that the buy-sell provision was "a vehicle to force the sale of *our* respective [ECH] interests" in the case that "either of us wanted out."  (Italics added.)  Appellants' attempts to argue that GGE and GIT were not represented in the arbitration, thereby depriving the arbitrator of subject matter jurisdiction over the dispute, is unavailing.  To find otherwise would be tantamount to "condon[ing] a level of 'procedural gamesmanship' " that the California Supreme Court has "condemned as 'undermining the advantages of arbitration.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30.)[4]

---

[4] At oral argument, appellants sought to reframe their challenge to the order confirming the arbitration award as one based on lack of subject matter

Moreover, we do not reach appellants' various arguments related to the merits of the arbitration award, which are not generally subject to judicial review. (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 11 [courts "will not review the validity of the arbitrator's reasoning" or "the sufficiency of the evidence supporting an arbitrator's award"].) Appellants' attempt to recast their merits arguments as a challenge to the arbitrator's powers is unavailing. Finally, we reject appellants' assertion that the trial court's decision compromised the integrity of the judiciary.

In sum, appellants present no valid basis on which the arbitration award must be vacated or the trial court's judgment is void.

## III. Remand To Consider Correcting the Award

Appellants alternatively argue that, even if we were to conclude the judgment is not void, as we have just done, we should remand for the trial court to correct the arbitration award to "confine it to Onderko's 49% interest and to name the proper liable parties (GGE/GIT instead of Wilson)."

Section 1286.6 authorizes a trial court to correct an arbitration award and confirm it as corrected if the court determines, as relevant here, there was an "evident mistake in the description of any person, thing or property referred to in the award." (§ 1286.6, subd. (a).) That authority is subject to section 1286.8, which in turn sets forth certain criteria for correcting an

---

jurisdiction, rather than personal jurisdiction. However, the primary argument raised in appellants' briefing is that the arbitrator lacked *personal* jurisdiction over Wilson, rendering the judgment void. In any event, appellants' claim that the arbitrator lacked subject matter jurisdiction on the basis just discussed is unconvincing. Additionally, appellants' cursory assertion in the opening brief that the arbitrator lacked subject matter jurisdiction over the buy-sell dispute on the basis that Wilson was not a party to the MOU is belied by the plain language of the MOU—which "includes Donald A. Wilson" as a party—and by Wilson's own admission that he was a party to the MOU in his answer to Onderko's demand for arbitration.

13

award.  (§ 1286.8.)  This includes providing notice and an opportunity to be heard on the issue of correction.  (*Id.*, subd. (b)(2).)

These statutes provide that the trial court must determine if correction of the award is warranted, subject to the relevant procedural criteria.  We decline appellants' invitation to remand with instructions to correct the award as they suggest.  However, we will remand for the limited purpose of permitting the trial court to determine if correction of the arbitration award is warranted.

## DISPOSITION

The judgment confirming the arbitration award is affirmed insofar as it finds vacatur of the award is not warranted.  We remand only for the limited purpose of allowing the trial court, in the first instance, to determine if correction of the arbitration award is warranted and proper under sections 1286.6 and 1286.8.  Onderko shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

PETROU, J.

WE CONCUR:

FUJISAKI, Acting P. J.

RODRÍGUEZ, J.

A170621 / *Golden Global Enterprises, Inc., et al. v. Onderko*
A170716 / *Onderko v. Wilson*